UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LANNING,

    Plaintiff,

v.

DAVID HUYGE,

    Defendant.
_____/

Case No. 1:20-cv-1192

Hon. Hala Y. Jarbou

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by Michael Lanning (sometimes referred to as "Lanning"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on motions for summary judgment filed by defendant physician assistant (PA) David Huyge (ECF No. 23) and plaintiff Lanning (ECF No. 26).

    **I.**    **Lanning's complaint**

Lanning filed his complaint on December 11, 2020 (ECF No. 1). Lanning alleged that he has pain in his back which has gotten worse over the past two years, *i.e.*, since 2018. Compl. at PageID.3. Lanning last visited PA Huyge on October 1, 2020. *Id*. Lanning repeatedly informed PA Huyge of his "skeletal pain," that there is no comfortable position for him, and has begged for cortisone shots and "an off-site medial appointment at the Musularskeletal [sic] Center at Butterworth Hospital in Downtown Grand Rapids." *Id*. Lanning states that his pain is due to: (1) L-4 & L-5 fused; (2) arthritis; (3) a slipped disk; (4) degenerative disk disease; and (5) osteoarthritis diagnosed in 1993, 2006, and 2016. *Id*. Lanning also has tendonitis in his left wrist. *Id*. The gist of Lanning's claim is that PA Huyge has deliberately refused to give him proper

1

medical treatment, which Lanning defines as "off-site medical appt. @ the Muscularskeletal Center." *Id*. Lanning alleged that PA Huyge's failure to give him this treatment violates his constitutional rights under the 8th and 14th Amendments of the United States Constitution. *Id*.

For his damages Lanning wants $100,000.00 per day since December 3, 2018, *Id*. at PageID.4. In addition to this enormous demand for damages, Lanning makes a number of frivolous demands unrelated to his civil rights claim such as: revoke PA Huyge's license; immediate release from prison without parole; "all state court records to be destroyed"; all MDOC records to be destroyed; and removal from the sex offender registry. *Id*.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

2

> significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Legal Standard

Lanning seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, Lanning alleged that PA Huyge violated his rights under the 8th Amendment by being deliberately indifferent to his serious medical needs. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the 8th Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable 8th Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A

court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id*. at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*.  at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation.  *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734, F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

**C.     Discussion**

PA Huyge seeks summary judgment because there is no genuine issue of material fact to support Lanning's 8th Amendment claims against him.  Huyge's interaction with Lanning commenced on November 29, 2018, when Huyge performed an initial chart review of Lanning's

4

medical records.  This review indicated a medical history of lumbago, headaches, and "chronic gastrointestinal issues." Huyge Aff. (ECF No. 23-2, PageID.117).  Huyge first examined Lanning at a scheduled provider visit on April 16, 2019, regarding chronic headache, lumbago and IBS (irritable bowel syndrome).  *Id*. at PageID.118.  Huyge documented that Lanning has a history of lumbago with intermittent pain exacerbations.  *Id*. Lanning was taking Tylenol with some relief and reported that his "back has been feeling better past few months and no related complaints today."  *Id*.  PA Huyge continued the current medication for pain relief.  *Id*.

On July 2, 2019, PA Huyge performed a chart review based on Lanning's complaints of right hip pain.  *Id*.  Huyge ordered Lanning to continue Tylenol and to do stretches for his hip pain.  *Id*.[1]  On August 19, 2019, Huyge performed another chart review because of Lanning's complaints of right hip pain.  *Id*.  Huyge ordered Lanning to perform daily glute, hamstring, and hip flexor stretching exercises for the hip pain, as well as self-massage and stress reduction techniques.  *Id*.  In addition, Huyge ordered Tylenol for pain.  *Id*.

On September 6, 2019, PA Huyge ordered x-rays due to Lanning's continued complaints of pain.  *Id*.  Huyge reviewed the x-ray results on September 13, 2019, which indicated "a normal right hip/pelvis."  *Id*.  Huyge's plan was "to continue store pain relievers, daily stretches and stretching exercises, and stress reduction," and address Lanning's condition at the upcoming provider appointment.  *Id*.

PA Huyge set out the matters addressed at Lanning's appointment:

> On September 26, 2019, Mr. Lanning presented to me for a scheduled provider visit.  I evaluated Mr. Lanning for his continued complaints of right hip pain.  Mr. Lanning described this pain in the lateral right hip area radiating to the right knee.  He was able to do squats in the yard and has been doing some exercises with minimal relief.  The x-ray shows a normal hip/pelvis.  Mr. Lanning does not report an injury to have caused this onset.  While Mr. Lanning described a positive

---

[1] The Court notes that on August 8, 2019, Lanning "refused callout for follow up of hip pain and to see if exercises / stretches he was given at his last nurse callout were working for him." Medical Records (ECF No. 24, PageID.163).

> history of lumbago, he believed the hip issue is unrelated. Mr. Lanning denies pain with ambulation and states that he only feels pain with certain positions or direct pressure. Upon examination, I noted slight proximal iliotibial (IT) band tenderness, no greater troch region tenderness or edema, 5/5 flexion / extension / adduction / abduction strength, 5/5 right knee flexion / extension strength, no muscle atrophy, and Mr. Lanning was able to perform wall and air squats without difficulty, wincing, or grimacing. No asymmetry was noted, and Mr. Lanning demonstrated fluid motion. I had had a lengthy discussion with Mr. Lanning and provided empathetic listening, education, and reassurance. I suspected Mr. Lanning had a right IT band syndrome. Mr. Lanning declined Tylenol for treatment. I demonstrated with patient numerous IT band stretches and exercises. Mr. Lanning reported "feeling better already" after performing these stretches with me. A handout was provided to Mr. Lanning for these exercises.

*Id*. at PageID.118-119.

About six months later, on March 31, 2020, Lanning appeared for a follow-up visit for his IT band syndrome. *Id*. at PageID.119. At that time, Lanning reported that his right hip pain "is much improved" after doing exercises and stretches, did not have any hip complaints at the visit "and instead discussed right wrist pain." *Id*.

On October 1, 2020, PA Huyge saw Lanning for a follow-up visit related to his IT band syndrome. *Id*. Lanning reported that the IT band syndrome has improved but stated "[he] needs a pain med[ication] for [his] constant joint pains all over." *Id*. While Lanning reported gastrointestinal issues and wrist issues, he did not complain of back pain at the visit. *Id*. at PageID.119-120. This was the last time that Huyge saw Lanning for the issues identified in his complaint. *Id*. at PageID.120.[2]

Lanning does not present any evidence to support his own motion for summary judgment or to rebut PA Huyge's affidavit. In his response, Huyge points out that "[w]ithout any

---

[2] The medical history set out in PA Huyge's affidavit is supported by Lanning's medical records. *See* Medical Records (ECF No. 24, PageID.127-199).

supporting evidence, Plaintiff cannot meet his burden in establishing that he is entitled to summary judgment pursuant to Fed. R. Civ. P. 56." Defendant's Response (ECF No. 27, PageID.214).[3]

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). Based on this record, PA Huyge addressed Lanning's medical complaints. There is no evidence that Huyge exhibited obduracy or wantonness in treating plaintiff, nor exhibit a mental state equivalent to criminal recklessness. *See Whitley*, 475 U.S. at 319; *Santiago*, 734 F.3d at 591. Accordingly, Huyge's motion for summary judgment should be granted.[4]

### IV. Recommendation

Accordingly, I respectfully recommend that defendant PA David Huyge's motion for summary judgment (ECF No. 23) be **GRANTED**, that plaintiff Michael Lanning's motion for summary judgment (ECF No. 26) be **DENIED**, and that this action be **TERMINATED**.

Dated: December 28, 2021   /s/ Ray Kent
United States Magistrate Judge

---

[3] The Court notes that Lanning has filed two additional briefs contrary to the requirements of W.D. Mich. LCivR 7.2(c). On November 17, 2021 (more than two months after Huyge filed his reply), Lanning filed a sur-reply (ECF No. 34). Then, on December 13, 2021, about six months after the dispositive motion deadline, Lanning filed a paper which he called "Plaintiff Michael Lanning 259428 pro se's Addendum to Motion for summary judgement, submitted 18 June 2021 C.E. & Response to Huyge's Motion for summary judgement Addendum/objection filed August 3rd, 2021 C.E." (ECF No. 35). The Court has not considered either of these unauthorized papers.

[4] The Court has noted defendant's submission of recent authority, *Phillips v. Tangilag*, 14 F.4th 524 (Sept. 17, 2021), a Sixth Circuit opinion issued a few weeks after defendant's motion was fully briefed. *See* Notice of Supplemental Authority (ECF No. 33). In his notice, defendant quotes two sentences from the *Phillips* opinion. *See* PageID.236-237. Defendant provides no explanation as to how this opinion would alter the Court's review of the pending motion for summary judgment.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).